1

2

3                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                              )
                               )
11   LENORA HUMPHREY-BAKER,     )     Case No. EDCV 07-1093-VAP
                               )     (JCRx)
12              Plaintiff,      )
                               )     **[Motion filed on Sept. 9,**
13       v.                     )     **2008]**
                               )
14   UNITED AIRLINES, INC.      )     **ORDER GRANTING DEFENDANT'S**
     and DOES 1-20,             )     **MOTION FOR SUMMARY JUDGMENT**
15   inclusive,                 )
                               )
16              Defendants.     )
     _____)
17

18

19       Defendant's Motion for Summary Judgment initially

20   came before the Court for hearing on September 29, 2008;

21   at the request of Plaintiff, the Court continued the

22   matter for additional argument on October 10, 2008.

23   After reviewing and considering all papers filed in

24   support of, and in opposition to, the Motion, as well as

25   the arguments advanced by counsel at the hearings, the

26   Court GRANTS Defendant's Motion for Summary Judgment.

27   ///

28   ///

# I. BACKGROUND

Plaintiff Lenora Humphrey-Baker ("Plaintiff") sued her former employer, United Airlines, Inc. ("Defendant"), alleging violations of California's Fair Employment and Housing Act ("FEHA").  Defendant filed this Motion for Summary Judgment ("Mot.") on September 9, 2008, seeking summary judgment or, in the alternative, summary adjudication.  Defendant filed a supporting Memorandum of Points and Authorities ("Def.'s Mem. P. & A.") and a statement of undisputed facts ("Def.'s SUF").

Plaintiff filed her "Points, Authorities, and Argument in Opposition to Defendant's Motion for Summary Judgment" ("Opp'n")[1] as well as her Opposition to Defendant's Separate Statement of Alleged Undisputed Facts on September 15, 2008.

Defendant filed a Reply ("Reply") on September 22, 2008, along with a document containing comprehensive objections to Plaintiff's evidence.[2]

///

///

---

[1] Plaintiff's Opposition exceeds the 25 page limit established by this Court's Standing Order.

[2] The Court has ruled on the objections submitted by Defendant in that document, "Defendant's Objections to Evidence Submitted in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment."  The Court's rulings are issued concurrently with this Order.

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.  <u>Id.</u>

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

## III. DISCUSSION

**A.   Facts**

The following material facts are supported adequately by admissible evidence.  In Plaintiff's Opposition to Defendant's Separate Statement of Alleged Undisputed Facts, Plaintiff disputes many facts but fails to produce

4

evidence sufficient to controvert them.  The facts below therefore are "admitted to exist without controversy" for the purposes of this Motion except where noted.  <u>See</u> Local Rule 56-3.

**Customer Service Representatives at the Ontario Airport**

From 1987 to 1988, Plaintiff worked for Defendant as a Reservations Sales Representative in Los Angeles, California.  (Def.'s SUF ¶ 1.)  Plaintiff transferred to the Ontario International Airport ("Ontario Airport") as a Customer Service Representative ("CSR") in 1988 and remained in the same position on either active or inactive status until Defendant discharged her in July 2007.  (<u>Id.</u> at ¶ 2.)  Although staffing levels have varied over time, Defendant employs between 60 and 65 CSRs at the Ontario Airport.  (<u>Id.</u> at ¶ 4.)  From about 1998 or 1999 on, CSRs were represented by a union and subject to various Collective Bargaining Agreements ("CBAs").  (<u>Id.</u> at ¶ 3.)  CSRs bid on the primary area where they would work.  (<u>Id.</u> at ¶ 10; Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Decl.") ¶ 52.)

The admissible evidence submitted shows that, from 1998 to the present, CSRs have worked in four areas: Ticket Counter, Gate, Baggage, and Ramp.  (Def.'s SUF ¶ 5.)  CSRs are expected to work outside of their assigned

1  areas.  (Def.'s SUF ¶ 5; see Pl.'s Decl. ¶ 9.)  Plaintiff

2  worked at the Ticket Counter and Gate areas in the years

3  before she was injured.  (Pl.'s Decl. ¶ 9.)  The

4  responsibilities of CSRs have changed over time.

5  Generally, they are as follows for each area.

6

7     Ticket Counter CSRs directly assist customers with

8  scheduling and fare information and check passengers in,

9  including lifting and tagging bags, which can weigh up to

10  99 pounds.  (Def.'s SUF ¶¶ 5-6; Pl.'s Decl. ¶ 9;

11  Declaration of Jeff Leifer ("Leifer Decl.") 92:9-21.)

12

13     Gate CSRs board passengers and perform other tasks.

14  Sometimes they must assist elderly and disabled

15  passengers by lifting them into their seats.  (Def.'s SUF

16  ¶ 9; Pl.'s Decl. ¶ 9.)  Gate CSRs also must operate

17  jetways, lift and open aircraft doors, and clean the

18  interior of aircraft.  (Def.'s SUF ¶ 9; Pl.'s Decl. ¶ 9.)

19  CSRs at the Gate must lift, bend, and stoop to do their

20  work.  (Def.'s SUF ¶ 9; Pl.'s Decl. ¶ 9.)

21

22     Ramp CSRs load baggage and perform other tasks which

23  require substantial lifting, bending, and stooping.

24  (Def.'s SUF ¶ 8.)  Baggage CSRs unload bags from aircraft

25  and load them onto a conveyor belt.  (Id. at ¶ 7.)

26  ///

27  ///

28

1  CSRs assigned to different areas help each other and
2  otherwise may be required to work in areas other than the
3  one to which they are assigned. (Id. at ¶ 13; see Pl.'s
4  Decl. ¶ 9.[3])

5

6  **Plaintiff's Injury and First Extended Illness Status**
7  **Leave**

8  In October 1998, Plaintiff broke her left foot and
9  ankle at work. (Def.'s SUF ¶ 32.) Plaintiff's injury
10 was very painful and affected her ability to walk; she
11 required multiple surgeries as a result. (Id. at ¶ 33.)

12

13 In October 1998, Plaintiff began a medical leave of
14 absence, called an Extended Illness Status ("EIS") leave.
15 (Def.'s SUF ¶ 32.) Plaintiff also filed a workers'
16 compensation claim in October 1998. (Id. at ¶ 32.)

17

18 **First Application for Social Security Disability**
19 **Insurance Benefits**

20 While she was injured, Plaintiff applied for Social
21 Security Disability Insurance ("SSDI") benefits. (Id. at
22 ¶ 37.) In February 2000, Plaintiff stated in her SSDI
23 application that she "became unable to work because of
24 [her] disabling condition on October 6, 1998." (Id. at ¶

25

26 _____

27  [3]For example, Plaintiff states: "[d]uring slow times
    at the Ticket Counter I would go to the Gate, the Ramp
    and other areas to help others who were busy." (Pl.'s
28 Decl. ¶ 9.)

37.)   Her application was denied and she appealed the decision.   (<u>Id.</u> at ¶ 38.)   In April 2002, Plaintiff received notice that her Social Security benefits appeal was successful and she received retroactive benefits. (Def.'s SUF ¶ 39.)

**Plaintiff's Return to Work**

Plaintiff returned to work in August or September of 2002.  (Pl.'s Decl. ¶ 44; Def.'s SUF ¶ 40.)  To do so, Plaintiff first received clearance from an Agreed Medical Examiner ("AME"), Dr. Lobley, in the summer of 2002. (Pl.'s Decl. ¶ 42; Def.'s SUF ¶ 40.)[4]

After returning to work as a CSR at the Ontario Airport Ticket Counter from approximately August, 2002, Plaintiff again began an EIS leave in June 2003.  (Pl.'s Decl. ¶ 50.)

**Defendant Enters Bankruptcy**

In December, 2002, Defendant filed a bankruptcy petition under Chapter 11 of the United States Code, 11 U.S.C. sections 101 through 1330, as amended.  (Def.'s

---

[4]An AME is a physician who examines an injured person to determine her medical status for the purposes of determining workers' compensation benefits.  (Def.'s SUF ¶ 36.)  Both sides agree to accept the AME's opinion for the purpose of the workers' compensation benefits proceedings.  (<u>Id.</u>)

SUF ¶ 75.)  At this time, Plaintiff was working as a CSR at Ontario Airport.

Defendant's management at Ontario Airport told employees about the company's bankruptcy and distributed claim forms to workers, including Plaintiff.  (Pl.'s Decl. ¶ 87.)  Plaintiff filed several claims in the spring of 2003 relating to physical "injury on the job," her workers' compensation case, and injury to her "left foot, ankle, low back, left leg, left ankle (work injury on job)."  (Def.'s SUF ¶ 76; Declaration of Betina Wheelon ¶ 4, Ex. H.)

**Plaintiff's Second EIS Leave**

In the spring of 2003, Plaintiff worked "long and difficult shifts" as a CSR at Ontario Airport and consequently suffered a "flare up" of her injuries. (Pl.'s Decl. ¶¶ 53-54.)  In about April, 2003, Plaintiff went to her doctor, who ordered her to stop working for about a month.  (Def.'s SUF ¶ 42; Pl.'s Decl. ¶ 54.)

On April 24, 2003, AME Dr. Lobley examined Plaintiff and concluded that she could work so long as she was able to sit part of the time.  (Def.'s SUF ¶ 44.)  Plaintiff returned to work as a CSR in May or June of 2003.  (See Pl.'s Decl. ¶ 54.)

///

1   As Plaintiff was a CSR, the CBA allowed her to take
2   an EIS leave for up to three years because of a work-
3   related injury.  (Def.'s SUF ¶ 86.)  On June 30, 2003,
4   Plaintiff began an EIS leave that would last until her
5   termination in 2006.  (See id. at ¶ 48.)

6

7   **First Reasonable Accommodation Process Meeting**
8   After Plaintiff began her EIS leave, Defendant
9   convened a Reasonable Accommodations Process ("RAP")
10  meeting to review information about Plaintiff's medical
11  condition and to determine whether Defendant would allow
12  Plaintiff to work or offer any accommodations.  (Id. at
13  49.)  Plaintiff attended, as well as representatives from
14  Defendant's management and Human Resources department.  A
15  union representative was also present.  (Id. at ¶ 50.)
16  At the RAP meeting, Defendant's representatives referred
17  to Dr. Lobley's 2003 report to determine that Plaintiff
18  would not be allowed to return to work as a CSR because
19  she could not perform essential job functions.  (Id. at
20  ¶¶ 51, 55.)

21

22  **Second Application for SSDI Benefits**
23  In November 2003, Plaintiff again filed for SSDI
24  benefits, stating she was "unable to work," and that she
25  "became unable to work because of [her] disabling
26  condition on June 13, 2003."  (Deposition of Lenora
27  ///

28

1   Humphrey-Baker ("Pl.'s Dep.") Ex. 42 cited at Def.'s SUF

2   ¶ 63.)  She stated that she was "still disabled."  (Id.)

3

4   **Vocational Rehabilitation**

5       While Plaintiff was on EIS leave, in 2004 Plaintiff

6   requested and Defendant paid for Plaintiff to participate

7   in Vocational Rehabilitation as part of the workers'

8   compensation process.  (Pl.'s Dep. Ex. 20; Def.'s SUF ¶

9   66.)  In connection with her vocational rehabilitation,

10  Plaintiff received approximately $7,100 so that she could

11  begin an embroidery business.  (Def.'s SUF ¶ 68; Pl.'s

12  Dep. 289:14-290:12, Ex. 20; Declaration of Tracy Venter

13  ("Venter Decl.") ¶¶ 2-4.)  To obtain this benefit, she

14  signed a Vocational Rehabilitation Plan acknowledging Dr.

15  Lobley's 2003 report as authority for Plaintiff's work

16  restrictions.  (Pl.'s Dep. 188:25-189:7, Ex. 20 §§ A, F,

17  quoted at Def.'s SUF ¶ 67.)[5]

18

19  **Plaintiff's Bankruptcy**

20      Plaintiff filed a petition for Chapter 7 bankruptcy

21  protection on March 2005 and received a discharge on June

22

23  _____

24      [5]At section A of the Vocational Rehabilitation Plan,
    it states: "[p]er Dr. Lobley's AME report of 5-2-03:
    limited to semi-sedentary work, can work in sitting

25  position half the time and one half time in standing and
    walking position with minimum demands for physical effort

26  whether standing, walking, or sitting."  At section F, it
    states "I have read and understand all four pages of this

27  plan and agree with all the plan's provisions."
    Plaintiff's signature appears directly below this

28  statement.

11

21, 2005.  (Def.'s SUF ¶ 70.)  Plaintiff did not include a disability discrimination charge nor a failure to accommodate charge as assets in any of her bankruptcy filings.  (Id. at ¶ 71.)

**2005 AME Examination**

On March 19, 2005, Plaintiff underwent another AME examination, this time by Dr. Smalley.  (Def.'s SUF ¶ 72; Pl.'s Decl. ¶ 69-74; Deposition of David E. Smalley, ("Smalley Dep.") 12:24-13:18, Ex. C.)  Dr. Smalley's 27-page report stated that Plaintiff's condition was permanent and stationary and that she had permanent restrictions regarding how much she could lift, bend, stoop, and walk.  (Def.'s SUF ¶ 73.)  Dr. Smalley concluded that Plaintiff's usual and customary work did not match her work restrictions and that she was eligible for Vocational Rehabilitation benefits.  (Id. at ¶ 73.)

**Defendant's Emergence from Bankruptcy Protection**

On January 20, 2006, Defendant's Second Amended Joint Plan of Reorganization ("Plan") was confirmed.  (Id. at ¶ 78.)  The effective date of the Plan was February 1, 2006.  (Id. at ¶ 81.)  An agent of Defendant mailed Plaintiff notice that the effective date of the Plan would be February 1, 2006.  (Id. at ¶ 84.)
///
///

**Requirements of the CSR Position in 2006[6]**

In 2006, the CSR position was the only United job available at the Ontario Airport. (Leifer Decl. at ¶ 6[7]; Declaration of Terri Parisi ("Parisi Decl.") ¶ 10; Def.'s SUF ¶ 113.) CSRs in 2006 had to be capable of doing a variety of physically demanding tasks, whether they worked at the Ticket Counter, Gate, Ramp, or Baggage areas. (Leifer Decl. ¶¶ 12, 13; Def.'s SUF ¶¶ 5-8 24, 105.) A CSR with Plaintiff's seniority date would not have been able completely to avoid work at the Ramp and Baggage areas because "[i]n 2006, there were 25 CSRs who were senior to Plaintiff," including workers with seniority dates reaching back to 1969. (See Parisi Decl. ¶¶ 7-8.)

In addition, the Ticket Counter area had been remodeled since Plaintiff last worked as a CSR in 2003; in late 2003 or early 2004, Defendant installed "Easy Check-In Units" ("ECUs"), requiring CSRs at the Ticket

---

[6]Although Plaintiff was not working as a CSR in 2006, she sought to establish what CSRs did during that year. As she lacked personal knowledge of the requirements of the CSR position at that time, the Court could not consider the statements in her declaration and relied on the admissible evidence provided by Defendant. For more information, see the Court's response to Defendant's Objection No. 38 in the evidentiary rulings filed concurrently with this Order.

[7]The Court considers Leifer's testimony regarding CSR duties as relevant to 2006 because Leifer worked at Ontario Airport only from 2005 to 2007. (Leifer Decl. ¶ 2.)

Counter to leave the counter and assist customers at the ECUs.  (Def.'s SUF ¶¶ 22-24.)

**Plaintiff Tries to Return to Work**

In April 2006, less than two months before her three-year EIS leave was to expire, Plaintiff informed Defendant that she wanted to return to work.  (Id. at ¶ 89.)  Defendant told Plaintiff to report to the medical department for clearance.  (Def.'s SUF ¶¶ 89-90.)

During her appointment at Defendant's medical department in April 2006, Plaintiff was seen by a nurse practitioner who completed a one-page Assessment of Functional Capabilities ("AFC") form describing Plaintiff's work restrictions.  (Pl.'s Decl. ¶¶ 91, 93-95; see Declaration of Dennis W. Korpman, M.D., ("Korpman Decl.") ¶¶ 6-7 (form completed at direction of doctor), Ex. D; Def.'s SUF ¶¶ 89-90.)  These restrictions were adopted from the 2005 report by AME Dr. Smalley and included prohibitions on heavy lifting, repeated bending or stooping, and prolonged standing and walking. (Korpman Decl. ¶¶ 5-6; Pl.'s Decl. ¶ 94; Def.'s SUF ¶ 91.)

On May 8, 2006, Plaintiff visited her personal physician, Dr. Thordarson.  During the May 8, 2006 visit, he released her for one week of work without

restrictions, effective June 13, 2006.  (Def.'s SUF ¶¶ 92-93, 98; Pl.'s Decl. ¶ 98.)[8]  Dr. Thordarson testified that he chose June 13, 2006 as the date to release Plaintiff for work because it was his "educated guess" as to when she would be able to "tolerate" it.  (Def.'s SUF ¶ 99.)  He was concerned about whether she would experience pain, and therefore she was to return to see him after a week of work to see if she needed to be taken off work.  (Id. at ¶ 98.)  He believed a stool would have made it easier for her to work as a CSR.  (Plaintiff's Opposition to Defendant's Statement of Alleged Undisputed Facts ¶¶ 366-67, 373.)

**Second Reasonable Accommodation Process Meeting**

On June 23, 2006, Plaintiff requested accommodation. She wrote a letter to Defendant asking for "some reasonable accommodation options that would enable me to perform the functions of my position."  (Pl.'s Decl. ¶ 100, Ex. 43.)

_____

[8]Plaintiff has produced two writings by Dr. Thordarson from May 8, 2006, as Plaintiff's Exhibit 38 to Plaintiff's Declaration.  The first document is a one-page Disability Status and Work Release Report and the second is a short letter from Dr. Thordarson.  Plaintiff does not authenticate this letter: she does not submit a declaration from Dr. Thordarson nor otherwise cite to an authenticating source.  The letter therefore is inadmissible.  The Court considers the release because Defendant properly authenticated and cited to it.  (See Def.'s SUF ¶ 93.)  For more information, see the Court's response to Defendant's Objection No. 1 in the evidentiary rulings filed concurrently with this Order.

On June 30, 2006, Plaintiff participated in a second RAP meeting. (Def.'s SUF ¶ 100.) Members of Defendant's management and Human Resources staff attended, as well as Plaintiff and a union representative. (Id. at ¶ 101; Pl.'s Decl. ¶ 101.)

Attendees referred to the AFC form of April 2006 regarding Plaintiff's ability to work as a CSR; Plaintiff argued it was inaccurate. (Def.'s SUF ¶¶ 102, 104; Pl.'s Decl. ¶ 102.) Plaintiff asserted she could work with or without accommodation. (Def's SUF ¶ 104.) The parties discussed whether or not Plaintiff could work as a CSR with the accommodation of a stool. (Id. at ¶¶ 103-04; Pl.'s Decl. ¶¶ 102-03.)

**Plaintiff's Termination from Employment and Initiation of this Action**

After the second RAP meeting, Defendant did not permit Plaintiff to return to work and terminated her employment as of July 1, 2006. (Def.'s SUF ¶ 111.) Plaintiff was receiving SSDI benefits when Defendant discharged her. (Id. at ¶ 112.)

On September 26, 2006, Plaintiff filed an administrative claim with the California Department of Fair Employment and Housing ("DFEH"). (Id. at ¶ 119.) On June 12, 2007, Plaintiff filed this lawsuit in the

16

California Superior Court, alleging disability discrimination and failure to accommodate. (<u>Id.</u> at ¶ 120.)  Defendant removed the action to this Court on August 28, 2007.

**Final Examination by AME**

Nearly a year after her discharge by Defendant, on September 27, 2007, Plaintiff again was examined by AME Dr. Smalley. (Def.'s SUF ¶ 116.)  Dr. Smalley reported that Plaintiff continued to have permanent work restrictions that were "essentially the same" as those in 2005. (<u>Id.</u>)

As of her deposition in August 2008, Plaintiff was receiving SSDI benefits. (<u>Id.</u> at ¶ 112.)

**B.   FEHA Claims**

Plaintiff alleges that Defendant violated the FEHA by discriminating against her based on her physical disability and by failing to offer reasonable accommodations. <u>See</u> Cal. Gov. Code § 12940(a), (m). Defendant seeks summary judgment on both claims.

Plaintiff must make out the same prima facie case for both claims.  First, Plaintiff has the burden of showing that she is a qualified worker with a disability. <u>Green v. State</u>, 42 Cal. 4th 254, 257, 258, 265, 267 (2007).  A

qualified worker with a disability is one who can perform the essential duties of her job, either with or without reasonable accommodations.  See County of Fresno v. Fair Employment and Housing Comm'n of Cal., 226 Cal. App. 3d 1541, 1553 n.5 (1991); Green, 42 Cal. 4th at 262.  If Plaintiff cannot demonstrate that she was a qualified worker with a disability, then her discharge could not have violated the FEHA.  See Cal. Gov't Code § 129409 (a)(1).

If Plaintiff can establish her prima facie case, Defendant must "produce evidence demonstrating it has not engaged in discrimination, such as establishing that the accommodation would impose an undue hardship on the operation of its program." Fresno, 226 Cal. App. 3d at 1553.  In the context of a summary judgment motion by Defendant, then, the burden falls as follows: Defendant must show why Plaintiff lacks evidence sufficient to raise a triable issue of fact as to (1) Plaintiff's status as a qualified worker with a disability; and (2) Defendant's failure to offer a reasonable accommodation.

### 1.  Qualified Worker with a Disability

Plaintiff asserts both disability discrimination and failure to accommodate claims regarding events that took place in 2003 and 2006.  To succeed on all her claims, Plaintiff must establish that she was a qualified worker

1 with a disability in both years.  See Green, 42 Cal. 4th
2 at 254, 257, 258, 265, 267.

3

4     Defendant claims that Plaintiff cannot meet this
5 burden for several reasons, which first can be grouped
6 into two principal defenses.  First, Plaintiff is barred
7 from asserting claims based on the events of 2003 because
8 the bankruptcies of Defendant and Plaintiff, in 2006 and
9 2005, respectively, discharged Plaintiff's claims and now
10 estop her from asserting them.  Second, Plaintiff cannot
11 press suit for events in 2006 because Plaintiff received
12 disability benefits and agreed to or adopted statements
13 about her ability to perform certain tasks which are
14 inconsistent with her ability to perform the essential
15 duties of a CSR.  (See Mot. 2-4.)  The Court examines
16 each of these defenses below, and then turns to
17 Defendant's argument that Plaintiff cannot show that she
18 is a qualified individual with a disability. (See Def.'s
19 Mem. P. & A. 1, 18-19.)

20

21          **a.  Defendant's and Plaintiff's Bankruptcies**
22     Defendant seeks to bar Plaintiff from bringing suit
23 for events that occurred in 2003 because any claim for
24 failure to accommodate or disability discrimination was
25 discharged during Defendant's bankruptcy in 2006.
26 Furthermore Defendant contends Plaintiff should be
27 estopped from bringing suit based on those events now
28

1  because she did not disclose them during her 2005
2  bankruptcy.

3

4            **i.  Defendant's Bankruptcy**

5       Defendant filed its bankruptcy petition in 2002 and
6  emerged from bankruptcy protection in early 2006;
7  Defendant's bankruptcy Plan was confirmed on January 20,
8  2006.  (Def.'s SUF ¶¶ 75, 78, 81.)  Defendant argues
9  that, under 11 U.S.C. section 1141(d)(1)(A), confirmation
10 of Defendant's bankruptcy Plan discharged any claim that
11 Plaintiff could advance for events before January 2006.
12 (Def.'s Mem. P. & A. 24.)

13

14       The confirmation of a bankruptcy plan "discharges the
15 debtor from any debt that arose before the date of such
16 confirmation . . . whether or not a proof of the claim
17 based on such debt is filed . . . ."  11 U.S.C. §
18 1141(d)(1)(A).  A disability claim is a debt for the
19 purposes of this statute.  <u>O'Loghlin v. County of Orange</u>,
20 229 F.3d 871, 874, 874 n.2 (9th Cir. 2000) (examining
21 effect of defendant's bankruptcy on plaintiff's
22 disability claim).[9]  Considering the case of an injured
23 worker who alleged that her employer failed to
24 accommodate her on several occasions, the Ninth Circuit

25  ───────────────

26       [9]<u>O'Loghlin</u> concerned suit against a municipality, but
   the court explicitly stated that the result would be the
27 same under 11 U.S.C. § 1141(d), the general bankruptcy
   provision under which Defendant filed.  <u>O'Loghlin</u> at 874
28 n.2.

found in O'Loghlin that an injured worker's claim for
failure to accommodate under the ADA was discharged when
her employer's bankruptcy plan was confirmed.[10]   Id. at
874, 874 n.2.   The plaintiff in O'Loghlin was able only
to bring suit for events that took place after her
employer emerged from bankruptcy.   Id. at 874-75, 876.

Here, Plaintiff's claims arose out of events that
occurred during a period stretching from pre-2003 through
July, 2006, that is, both before and after Defendant's
bankruptcy Plan was confirmed.   (Def.'s SUF ¶ 81.)
Although Plaintiff filed claims in Defendant's bankruptcy
case regarding her workers' compensation case and the
underlying physical injuries, she did not file a claim
relating to Defendant's failure to accommodate or its
discrimination on the basis of disability.   (Id. at ¶
76.)   Under O'Loghlin, Defendant's bankruptcy discharge
bars Plaintiff's claims to the extent that she seeks to
recover for events before January 20, 2006.   See
O'Loghlin, 229 F.3d at 876.   Defendant's bankruptcy
discharge does not affect Plaintiff's ability to bring
suit for events after January 20, 2006.

///

///

---

[10]The ADA and the FEHA differ in some ways but
California courts find interpretations of the ADA
persuasive when interpreting the FEHA.   Green, 42 Cal.
4th at 262-63.

1    Plaintiff seeks to distinguish O'Loghlin, arguing she
2 should not be barred because she did not understand that
3 the 2003 events could give rise to the claims she now
4 advances.  (Opp'n 33-35.)  The O'Loghlin court, however,
5 held that "a claim arises, for purposes of discharge in
6 bankruptcy, at the time of the events giving rise to the
7 claim, not at the time that the plaintiff is first able
8 to file suit on the claim."  O'Loghlin, 229 F.3d at 874.
9 Here, Plaintiff was aware of the 2003 events, if not
10 their legal import, before Defendant's Plan was confirmed
11 in 2006.  Accordingly, she is barred from recovering for
12 any alleged violation occurring before January 20, 2006.
13 See id. at 874-76.
14
15                **ii. Plaintiff's Bankruptcy**
16    Alternatively, Defendant argues that the claims
17 Plaintiff now advances based on the events of 2003 were
18 potential assets that should have been disclosed when she
19 filed for bankruptcy in 2005 and she therefore cannot
20 press them now.  Furthermore, Defendant argues Plaintiff
21 ought to be estopped from recovery for claims arising
22 before her bankruptcy because Plaintiff did not mention
23 them when seeking discharge of her debts.  (Def.'s Mem.
24 P. & A. 22-23.)
25
26    A bankruptcy petition must disclose "all assets,
27 including contingent and unliquidated claims," such as
28

potential law suits.  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 785 (9th Cir. 2001).  Plaintiff concedes that a workplace discrimination claim is a potential asset that should be disclosed as part of a bankruptcy petition.  (Opp'n 31, discussing Wieberg v. Morton, 272 F.3d 302 (5th Cir. 2001).)

Nevertheless, the Court declines to find Plaintiff estopped from advancing her claims.  Judicial estoppel is a remedy not appropriate to all circumstances.  See Kelsey v. Waste Management of Alameda County, 76 Cal. App. 4th 590, 598 (1999).  Estoppel of later prosecution of a claim not included in a plaintiff's bankruptcy petition can be appropriate where defendant "adduce[s] admissible evidence establishing each element" of the following test:

> (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e. the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.

Id.; see also Hamilton, 270 F.3d at 782-83 (stating that estoppel of claims not listed in a bankruptcy petition may be appropriate where party took two clearly inconsistent positions; acceptance of both versions would

1   make it appear as though the court had been misled; and

2   one party would obtain an unfair advantage).

3

4       In Kelsey, the plaintiff alleged he was discriminated

5   against while working for defendant.  Kelsey, 76 Cal.

6   App. 4th at 593.  He subsequently filed for bankruptcy

7   under Chapter 13 and failed to list his discrimination

8   claim as an asset.  Id. at 594.  Defendant asked the

9   court to estop plaintiff from asserting his

10  discrimination charge.  The Kelsey court found the first

11  four factors were satisfied but that plaintiff's "failure

12  to list his claim could be attributed to oversight or

13  neglect as easily as to some ulterior motive."  Id. at

14  599.  The Kelsey court therefore declined to estop the

15  plaintiff.  Id.

16

17      Here, as in Kelsey, the first four factors are

18  satisfied.  See Kelsey, 76 Cal. App. 4th at 599.

19  Plaintiff admits she did not list the discrimination and

20  failure to accommodate claims she now advances among her

21  assets during her 2005 bankruptcy proceedings, during

22  which she obtained bankruptcy relief.  (Opp'n 29-31); see

23  Kelsey, 76 Cal. App. 4th at 598.  Plaintiff claims she

24  did not list her claims based on the events of 2003 out

25  of ignorance of the law; there is no evidence in the

26  record to cast doubt on this.  (See Opp'n  29-31.)

27  Estoppel therefore is not appropriate.  Compare Kelsey,

28

1  76 Cal. App. 4th at 598-600 (estoppel not appropriate
2  where plaintiff omitted claims out of ignorance); <u>with</u>
3  <u>Hamilton</u>, 270 F.3d at 789-83, 785 (estoppel appropriate
4  where plaintiff appeared to act out of intent to
5  defraud).

6

7      This does not affect the Court's finding regarding
8  the effect of Defendant's 2006 bankruptcy, however.
9  Accordingly, the Court finds Plaintiff is not estoped
10 from prosecuting claims based on her failure to list them
11 during her 2005 bankruptcy.

12

13          **b.   Receipt of Disability Benefits**

14     Defendant's second defense relies on the effect of
15 Plaintiff's receipt of disability benefits on her ability
16 to bring suit for the events of 2006.  Defendant seeks to
17 estop Plaintiff from asserting that she was a qualified
18 worker with a disability in 2006 because (1) she received
19 SSDI benefits, and (2) she made or adopted certain
20 statements in conjunction with receipt of workers'
21 compensation benefits that are inconsistent with her
22 status as a qualified worker with a disability.  (Mot. 2-
23 3; Def.'s Mem. P. & A. 15-16, 18-20.)  The Court first
24 examines whether Plaintiff's receipt of SSDI benefits
25 blocks her from asserting that she could work without an
26 accommodation.  The Court then turns to the effect of

27

28

1  statements Plaintiff agreed to during workers'
2  compensation proceedings.

3

4              **i.   Receipt of SSDI Benefits**

5      To receive SSDI benefits, an applicant must show that
6  she "is not only unable to do [her] previous work but
7  cannot . . . engage in any other kind of substantial
8  gainful work which exists in the national economy."
9  <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S.
10  795, 800 (1999) (quoting 42 U.S.C. § 432(d)(2)(A)).   In
11  contrast, to make a prima facie case under the FEHA a
12  plaintiff must show that she can perform the essential
13  duties of her job.   Cal. Gov't Code § 12940 (a), (m).

14

15      The United States Supreme Court has held that receipt
16  of SSDI benefits does not bar the prosecution of an ADA
17  disability claim in certain circumstances.   <u>Cleveland</u>,
18  526 U.S. at 797.

19          [P]ursuit, and receipt of SSDI benefits does not
            automatically estop the recipient for pursuing
20          an ADA claim. . . . Nonetheless, an ADA
            plaintiff cannot simply ignore her SSDI
21          contention that she was too disabled to work.
            To survive a defendant's motion for summary
22          judgment, she must explain why that SSDI
            contention is consistent with her ADA claim that
23          she could 'perform the essential functions' of
            her previous job, at least with 'reasonable
24          accommodation.'

25  <u>Id.</u> at 797-98.   In other words, a plaintiff must "proffer
26  a sufficient explanation" of her seemingly contradictory
27  positions.   <u>Id.</u> at 806.
28

1    FEHA plaintiffs must clear a comparable hurdle.  The
2  California Court of Appeal used a similar standard when
3  considering whether receipt of disability benefits
4  estopped a plaintiff from advancing a FEHA failure to
5  accommodate claim in Bell v. Wells Fargo Bank, 62 Cal.
6  App. 4th 1382, 1386 (1998).  In both Cleveland and Bell,
7  the courts found that a plaintiff can receive SSDI
8  benefits and press claims under the ADA or FEHA,
9  respectively, so long as she offers sufficient
10  explanation; the ability to work only *with an*
11  *accommodation* consists of an adequate explanation.
12  Cleveland, 526 U.S. at 806; Bell, 62 Cal. App. 4th at
13  1387, 1389.

14

15    Here, Plaintiff applied for and received SSDI
16  benefits.  She submitted an application to the Social
17  Security Administration that read in part, "I became
18  unable to work because of my disabling condition on June
19  13, 2003."  (Pl.'s Dep. Ex. 42.)  Plaintiff now alleges
20  that in 2006 she was a qualified worker with a
21  disability, able to work as a CSR with or without an
22  accommodation.  (Opp'n 2, 19.)

23

24    Plaintiff's statement that she was unable to work,
25  submitted for the purposes of SSDI benefits, contradicts
26  her statement that she was able to work *without* an
27  accommodation, advanced for the purposes of her FEHA

28

1 claims.  (Opp'n 2, 19); <u>see</u> <u>Bell</u>, 62 Cal. App. 4th at
2 1386.  Plaintiff offers no explanation for this
3 contradiction.  Under <u>Bell</u>, Plaintiff is estopped from
4 claiming that she could work as a CSR without an
5 accommodation in 2006.  <u>See Bell</u>, 62 Cal. App. 4th at
6 1386.

7

8     Plaintiff also asserts that she was able to work as a
9 CSR *with* an accommodation in 2006.[11]  (Opp'n 2, 19.)  When
10 Plaintiff concedes that she would need accommodation to
11 work as a CSR, Plaintiff provides the kind of explanation
12 accepted by the court in <u>Bell</u>.  <u>See</u> <u>Bell</u>, 62 Cal. App.
13 4th at 1387.  Plaintiff's receipt of SSDI benefits does
14 not estop her from pressing this argument.

15

16          **ii.  Statements Agreed to in Workers'**
17              **Compensation Proceedings**
18     Plaintiff asserts that she was a qualified worker
19 with a disability, able to work with accommodations
20 appropriate to her limitations.  Nested within this
21 argument is Plaintiff's assertion that her limitations
22 were different and lesser than those established in the
23 AME reports, which were written only for the purpose of
24 providing workers' compensation benefits.  Plaintiff does

25 _____

26     [11]Arguing that Plaintiff could work with or without
an accommodation may be tantamount to arguing that she
27 could work without accommodation.  Drawing all reasonable
inferences in favor of the non-moving party, however, the
28 Court analyzes Plaintiff's claims under both theories.

1  not argue that different estoppel principles apply to

2  workers' compensation proceedings than those discussed

3  above.  Rather, she asserts that the AME reports are

4  irrelevant to her FEHA claims because they were prepared

5  for a system that does not take into consideration the

6  ability to work with a reasonable accommodation.

7  (Plaintiff's Opposition to Defendant's Separate Statement

8  of Undisputed Facts ¶ 44.)[12]

9

10  Defendant seeks to block Plaintiff from this path,

11  arguing that she is estopped from disavowing the AME

12  reports.  (See Def.'s Mem. P. & A. 19.)

13

14  It is clear that Plaintiff agreed to be bound by the

15  AME reports for the purpose of receipt of workers'

16  compensation benefits.  (Def.'s SUF ¶¶ 36, 67 (assent to

17  restrictions established in AME report in order to

18  receive vocational rehabilitation benefits); Venter Decl.

19  ¶ 5.); see Jackson v. County of L.A., 60 Cal. App. 4th

20  171, 190-91 (1997).[13]  Dr. Smalley's 2005 and 2007 AME

21  reports found limitations on Plaintiff's ability to do

22  heavy lifting, repeated bending, stooping, standing and

23  walking, and concluded that her "customary work did not

24  ─────────────

25  [12]Plaintiff repeats this objection throughout her
    Opposition to Defendant's Separate Statement of Alleged
26  Undisputed Facts but cites no authority for it.

27  [13]Plaintiff disputes this fact but does not
28  controvert it.

1  fit within her work restrictions."   (Def.'s SUF ¶¶ 72-73,
2  116.)

3

4       Plaintiff correctly points out that there are
5  significant differences between the standards used in the
6  workers' compensation system and those employed to assess
7  an ADA or FEHA claim; for example, a worker can be
8  "disabled" for purposes of workers' compensation but able
9  to work with an accommodation for the purposes of the ADA
10  or FEHA.  <u>Jackson</u>, 60 Cal. App. 4th at 187; <u>see</u> <u>Malais v.</u>
11  <u>L.A. City Fire Dep't</u>, 150 Cal. App. 4th 350, 353 n.1
12  (2007) (conclusions reached in workers' compensation
13  board decisions do not establish through res judicata or
14  collateral estoppel the outcome of FEHA cases because
15  FEHA cases involve different issues).

16

17       Nevertheless, while the conclusions established in
18  workers' compensation proceedings are not a per se bar to
19  a FEHA claim, a plaintiff's assent to a set of work
20  restrictions predicate to receipt of workers'
21  compensation benefits can bar her from asserting a
22  directly contrary factual position when seeking relief
23  under disability discrimination statutes.   <u>See Jackson</u>,
24  60 Cal. App. 4th at 190-91; <u>cf.</u> <u>Cleveland</u>, 526 U.S. at
25  797-98, 806 (estoppel test where plaintiff received  SSDI
26  benefits and brings ADA claim); <u>Bell</u>, 62 Cal. App. 4th at

27

28

1387, 1389 (estoppel test where plaintiff received SSDI
benefits and brings FEHA claim).

As discussed above, Plaintiff is estopped from
arguing that she could work without accommodation.  It is
a closer question whether Plaintiff can assert that she
could work with an accommodation because she had
different and lesser restrictions than those established
in the AME reports.  For the reasons discussed below, the
Court need not reach that issue because Plaintiff cannot
support her contention that she was a qualified worker
with a disability, able to perform the essential duties
of the CSR position in 2006 with accommodation.

        c.  **"Qualified individual with a disability"**

Plaintiff has the burden at trial of showing that she
was a qualified worker with a disability, able to perform
the essential duties of the CSR position in 2006.  <u>See</u>
<u>Green</u>, 42 Cal. 4th at 257-58, 267, 267; <u>Nadaf-Rahrov v.</u>
<u>Neiman Marcus Group, Inc.</u>, 166 Cal. App. 4th 952, 978
(2008) ("Applying <u>Green</u>'s burden of proof analysis to
section 12940(m), we conclude that the burden of proving
ability to perform the essential functions of a job with
accommodation should be placed on the plaintiff . . ."
<u>Id.</u>).
///
///

31

Under <u>Celotex</u>, 477 U.S. at 325, where the non-moving party has the burden at trial, the moving party's burden is met by pointing out the absence of evidence supporting the non-moving party's case.  As discussed below, Defendant United has met this burden by showing that Plaintiff lacks evidence that at the time of her discharge, she was a qualified worker, that is, one who "could perform the essential functions of the [CSR] job with or without reasonable accommodation." (<u>Nadaf-Rahrov</u>, 166 Cal. App. 4th at 978; Def.'s Mem. P. & A. 18.)  Hence, the burden shifts to Plaintiff to make an affirmative showing regarding the essential duties of the CSR position in 2006 and her own medical condition at that time.  As she did not do both, Defendant is entitled to summary judgment.  <u>See</u> <u>Nadaf-Rahrov</u>, 166 Cal. App. 4th at 978; <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 248, 252.

**i.   Essential Duties of a CSR in 2006**

Defendant has produced admissible evidence regarding the essential duties of a CSR in 2006, the only position available with United at the Ontario Airport that year. (Def.'s SUF ¶ 113.)  This evidence shows that the CSR position was physically demanding and could vary day by day.  (Def.'s SUF ¶¶ 5, 24, 105, 109.)  For example, at the Gate, CSRs opened and closed a heavy aircraft door and "assist[ed] customers with wheelchair needs"

1   including lifting disabled customers.  (Leifer Dep.

2   57:23-58:12 cited at Def.'s SUF ¶ 5.)  Gate CSRs also

3   cleaned the aircraft, which required "a lot of bending,

4   stooping, reaching . . . ."  (Leifer Dep. at 61:8-14

5   cited at Def.'s SUF ¶ 5.)

6

7       At the Ticket Counter, work could include "assisting

8   customers with their baggage . . . helping them place

9   [bags] on the scales" and "work[ing] on both sides of the

10  counter" including "stand[ing] in the middle of the

11  lobby, greeting customers."  (Leifer Dep. 55:2-18, 54:

12  15-24; 57:11-19 cited at Def.'s SUF ¶ 5.)

13

14      The work in 2006 of CSRs at the Baggage and Ramp

15  areas are also relevant as Defendant has produced

16  evidence that in 2006 a CSR with Plaintiff's seniority

17  date would not have been able to avoid work in these

18  areas.  (See Declaration of Terri Parisi ¶¶ 7-8

19  (According to Defendant there were 25 CSRs senior to

20  Plaintiff in 2006. Id.).)  The work of CSRs in these

21  areas required "taking bags from a belt . . . and loading

22  them onto appropriate carts" and then "loading them onto

23  conveyor belts into the belly of the aircraft.  The CSR

24  [wa]s also in the belly of the aircraft."  (Leifer Dep.

25  58:13-20, 59:8-11 cited at Def.'s SUF ¶ 5.)

26  ///

27  ///

28

1    Plaintiff did not controvert Defendant's evidence.
2  First, although she offered her own testimony regarding
3  the duties of CSRs in 2006, she did not work as a CSR in
4  2006.  Her declaration therefore lacks foundation as to
5  this subject.[14]

6

7    Plaintiff also contended that several of Defendant's
8  statements about the CSR position in 2006 were in dispute
9  but she failed to controvert them effectively.  For
10 example, Plaintiff claimed that Defendant's
11 characterization of a CSR's duties in 2006 as "varied"
12 and "strenuous" was in dispute, but cited only portions
13 of Leifer's deposition testimony which support
14 Defendant's position.  (See Plaintiff's Opposition to
15 Defendant's Separate Statement of Alleged Undisputed
16 Facts ¶¶ 249-51.)[15]  Thus, Plaintiff failed to make the
17 requisite showing as the party opposing summary judgment.
18  See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 248,
19 252.

20

21

22

23
_____

24 [14]See the Court's ruling on Defendant's Objection No.
   38 in the evidentiary rulings issued concurrently with
25 this Order.

26 [15]Plaintiff offered only two declarations in
   opposition to summary judgment, those of Plaintiff and a
27 coworker who retired in 2003.  The coworker gave no
   information about the general work duties of CSRs, nor a
28 description of their duties in 2006.  (See Hortemiller
   Decl. ¶ 2.)

1        At the hearing on this Motion, Plaintiff cited to

2   Nadaf-Rahrov, a case distinguishable from the present

3   one.  The plaintiff in Nadaf-Rahrov suffered from various

4   medical conditions which she admitted prevented her from

5   performing her former, physically strenuous, job as a

6   fitter in defendant's department store.  166 Cal. App.

7   4th at 960, 965.  Her employer offered many other kinds

8   of work and Nadaf-Rahrov asserted she could have

9   performed them with accommodation.  See id. at 965.  The

10  question before the Nadaf-Rahrov court, therefore, was

11  whether at the summary adjudication stage defendant had

12  "show[n] there [wa]s no triable issue of fact about

13  Nadaf-Rahrov's ability, with or without accommodation, to

14  perform the essential functions of an available vacant

15  position that would not be a promotion."  Id. at 965.

16

17       To resolve this question the court examined

18  defendant's proof regarding the requirements of vacant

19  positions.  Id. at 969.  Defendant had evaluated

20  plaintiff for fourteen positions, and claimed these were

21  the only open jobs that were "at or below" the

22  plaintiff's previous level of employment, but Nadaf-

23  Rahrov produced evidence of the pay rates of the various

24  positions, which indicated that all of them had pay rates

25  below her former position, thus showing that additional,

26  less demanding positions may have been available.  Id. at

27  969, 970-71.  Here, the CSR position was the only vacant

28

1   position at Ontario in 2006 (Def.'s SUF ¶ 113; Leifer

2   Decl. ¶ 6; Parisi Decl. ¶ 8) and Plaintiff only indicated

3   interest in work at United's Ontario Airport location.

4   (See Pl.'s Decl. ¶¶  89, 65.)   Therefore, the Nadaf-

5   Rahrov Court's reasoning on the showing a plaintiff must

6   make as to the  alternative vacant positions is

7   inapposite.   Furthermore, as explained below, Plaintiff's

8   statements about her physical ability do not show that

9   she was able to perform the essential duties of the job.

10

11              **ii. Plaintiff's Ability to Perform the**

12                  **Essential Duties of a CSR**

13       Plaintiff contends she was a qualified worker with a

14   disability in 2006 because her physician, Dr. Thordarson,

15   released her to work.  (Pl.'s Decl. ¶ 98; Opp'n 25.)[16]

16   That release was unrestricted.  (Def.'s SUF ¶ 93.)  Thus,

17   its only relevance is to show that Plaintiff was able to

18   work *without* accommodations.  Plaintiff is estopped from

19   advancing this position, as discussed above.

20

21       After carefully considering the arguments advanced by

22   Plaintiff's counsel at the hearing, the Court takes note

23   of portions of Dr. Thordarson's deposition in which he

24

25          [16]Plaintiff's pinpoint citation to Dr. Thordarson's
26   deposition transcript is incorrect, as Plaintiff cites to
     a page that does not exist.  However, the information is
27   contained in the material directly adjacent to what
     Plaintiff cites and the Court therefore takes it into
28   consideration.

states that a stool to sit on would have made it easier
for Plaintiff to work as a CSR.  (Plaintiff's Opposition
to Defendant's Separate Statement of Alleged Undisputed
Facts ¶¶ 366-67; 373.)  Construed in the light most
favorable to the Plaintiff, this might show that
Plaintiff could perform some of the duties of a CSR at
the Ticket Counter with the accommodation of a stool in
2006.[17]

This medical testimony does not preclude summary
judgment because Defendant has demonstrated that
Plaintiff lacks evidence sufficient to prove the
essential duties of a CSR in 2006 were such that she
could perform them.  See Green, 42 Cal. 4th at 257-58,
267; Nadaf-Rahrov, 166 Cal. App. at 978 ("the burden of
proving ability to perform the essential functions of a
job with accommodation should be placed on the
plaintiff.").

Even assuming, without deciding, that a stool would
have been a reasonable accommodation allowing Plaintiff

_____

[17]Plaintiff cannot offer her own testimony regarding
her ability to work with lesser and different
restrictions than those listed in the AME reports because
this is a subject appropriate for testimony from one with
specialized training in assessing disabilities.  See
Sementilli v. Trinidad Corp., 155 F.3d 1130 (9th Cir.
1998) (where worker found totally disabled and then
released for work by same doctor, expert testimony from
different doctor appropriate regarding worker's
capabilities.)

1  to perform the essential duties of a CSR at the Ticket
2  Counter in 2006, Plaintiff has not shown how a stool
3  would help her perform all the other essential duties of
4  a CSR.  As to some duties, Plaintiff admits that even
5  with a stool her condition prevented her from performing
6  them: she could not "kneel[] in the pit of the aircraft
7  for extended periods of time . . ." to clean it as a Gate
8  CSR nor "load[] and stack[] luggage. . . ." at the Ramp.
9  (Pl.'s Decl. ¶ 123.)  As to other duties, Plaintiff has
10 not brought forth evidence demonstrating how a stool
11 would allow her to do them.  For example, she does not
12 explain how a stool would help her as a Gate CSR move
13 elderly and disabled passengers in and out of their
14 seats.  (See Def.'s SUF ¶¶  5-9.)

15

16      Defendant, on the other hand, points to the 2005 and
17 2007 AME reports to show that Plaintiff could not perform
18 the essential duties of a CSR.  (Def.'s SUF ¶ 73.)
19 Although the Court does not accept the statements in the
20 AME reports as legal conclusions, it does consider them
21 as evidence that Plaintiff had limited abilities to stand
22 and walk for extended periods of time, or to do heavy
23 lifting, or repeated bending and stooping.  (Compare
24 Def.'s SUF ¶¶ 5-9, 105 (duties of CSRs) with 72-73, 116
25 (2005 and 2007 AME reports).)
26 ///
27 ///
28

1      **2.   Failure to Accommodate**

2          As the Court finds that Plaintiff cannot demonstrate

3   that she was a qualified worker, it need not assess

4   Plaintiff's showing regarding Defendant's accommodation

5   efforts.

6

7                         **IV. CONCLUSION**

8          For the reasons set forth above, Defendant's Motion

9   is GRANTED.

10

11  Dated:   October 21, 2008      _____

12                                   VIRGINIA A. PHILLIPS
                                   United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28